# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

American Association of University
Professors, *et al.*,

                Plaintiffs,

        v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY*, et al.*,

             Defendants.

Case No. 1:26-CV-00300

DECLARATION OF
ANDREW PARKER

I, Andrew Parker, hereby declare under penalty of perjury, as follows:

1. I am the Branch Chief of the Residence and Admissibility Branch (RAB) within the Office of Policy & Strategy (OP&S) of U.S. Citizenship and Immigration Services (USCIS). As Branch Chief, I oversee the agency's policies for adjustment of status (including but not limited to employment-based (EB) and family-sponsored (FS)) and coordinate on visa policy with the Department of State (DOS).

2. I have served as the Branch Chief of RAB since October of 2019. Prior to assuming my role as Branch Chief of RAB, I served as an Adjudications Officer within the Residence and Naturalization Division of OP&S for two years, where I was the lead subject matter expert on employment-based adjustment of status and the coordinator of our visa policy efforts with the DOS. Prior to my work with OP&S, I served as a Supervisory Immigration Services Officer at the Baltimore Field Office of USCIS. I started my career with USCIS as an Immigration Services Officer at the Baltimore Field Office in 2012.

3. I submit this declaration in order to provide an overview of the visa allocation process and the impact of the establishment of the Gold Card program on the named plaintiffs, who are seeking or intend to seek EB visas. The matters contained in this declaration are based upon my personal knowledge and on information provided to me by the DOS and other USCIS employees in the course of my official duties as Branch Chief of RAB.

DECLARATION OF ANDREW PARKER
1:26-CV-00300

**Relevant Elements of the Visa Allocation Process**

*Overall Limits*

4. The Immigration and Nationality Act (INA) § 101-507, 8 U.S.C. § 1101–1537, governs how foreign nationals obtain visas to enter and permanently reside in the United States. INA § 201, 8 U.S.C. § 1151, establishes a maximum number of aliens who "may be issued immigrant visas or who may otherwise acquire the status" of a Lawful Permanent Resident (LPR) within a fiscal year for the family-sponsored, EB, and diversity visa categories.  Congress established five EB categories, which are described in INA § 203(b), 8 U.S.C. § 1153(b). The five categories are made up of priority workers (EB1), members of professions holding advanced degrees or of exceptional ability (EB2), skilled workers, professionals, and other workers (EB3), special immigrants, comprised mainly of special immigrant juveniles, ministers of religion, and religious workers (EB4), and employment creation immigrants (EB5).

5. Under INA § 201(d), 8 U.S.C. § 1151(d), the worldwide level of EB immigrants for a fiscal year (FY) is 140,000 plus, as noted under section 201(d)(1)(C), the "difference (if any) between the maximum number of visas which may be issued under section 203(a) [1153(a)] (relating to family-sponsored immigrants) during the previous fiscal year and the number of visas issued under that section during that year."  In FY 2025, the difference between the available family-sponsored visa numbers and the number of visas issued was approximately 46,324.  As a result, the FY 2026 EB annual limit is 140,000 plus ~46,324, or ~186,324.  Please note that this does not include unused visas in the EB5 category from the FY 2024 and FY 2025 limits that carry over to FY 2026, which are in addition to the ~186,324.

*Per-Country Limits*

6. Under INA § 202(a)(2), 8 U.S.C. § 1152(a)(2), "the total number of immigrant visas made available to natives of any single foreign state or dependent area under subsections (a) and (b) of section 203 [1153] in any fiscal year may not exceed seven percent (in the case of a single foreign state) or two percent (in the case of a dependent area) of the total number of such visas made available under such subsections in that fiscal year."  Accordingly, there is a 7 percent annual per-country limit that applies to all of the family-sponsored and EB preference categories combined.  Per the statute, the 7 percent per country limit does not apply on a per-category basis and does not apply to the employment-based or family-sponsored visas in isolation. For example, the sum of the family-sponsored and EB limit for FY 2026 is ~412,324, a figure reached by taking the EB cap of ~186,324 for FY 2026 and adding the 226,000 family-sponsored cap. Natives of a single foreign state may receive up to 7 percent of that total, or 28,863

DECLARATION OF ANDREW PARKER
1:26-CV-00300

visas.  However, if natives of that single foreign state only use, for example, 5,000 family-sponsored visas, they could use 23,863 EB visas, divided in any way between the five EB categories.  Currently, the countries that reach, and are therefore affected by, the 7 percent per country cap are China, India, Mexico, and the Philippines.

7. According to the complaint, the named plaintiffs are from Mexico, Colombia, Taiwan, and Ghana and are seeking or will seek immigrant visas in the EB1 or EB2 categories. In those two categories, only aliens chargeable to China and India face delays in visa availability relative to aliens from other countries as a result of the per-country limits. Please note that while a particular country may reach and be affected by the 7 percent per country cap, aliens chargeable to that country may not experience a delay in visa availability within a particular EB or family-sponsored category if there is low demand for visas in that category from that country.  Of particular relevance to this litigation, aliens chargeable to Mexico currently experience no delays in visa availability within EB1 and EB2 as a result of the per-country cap.  Aliens chargeable to Mexico and the Philippines have the same Final Action Date as those from every country other than China and India.  Aliens are generally chargeable to their country of birth for the purpose of the per-country limits, with limited exceptions, under INA § 202(b).

8. Further, under INA § 202(a)(5), 8 U.S.C. § 1152(a)(5), if the number of available visas within a particular EB category exceeds the demand for those visas within a calendar quarter, then the remaining visa numbers in that particular category may be used without regard to the per-country limit in INA § 202(a)(2).  This exception has applied every fiscal year since the establishment of the current statutory scheme by the Immigration Act of 1990 to at least two out of the three main EB categories (first, second, and third preference) and in most years has applied to all three.  During FY 2026, the exception of INA § 202(a)(5), 8 U.S.C. § 1152(a)(5), has resulted in additional EB1 visas for both India and China, additional EB2 visas for India, and additional EB5 unreserved visas for China.

### *Establishing a Final Action Date*

9. When the amount of demand for a particular category/country exceeds the supply of visa numbers available, the category/country is considered "oversubscribed" and a visa availability cut-off date is established.  The cut-off date is the priority date (the date upon which the underlying labor certification application was accepted for processing by the Department of Labor, or if exempt from a labor certification requirement as EB1, EB2 NIW, EB2/3 Schedule A, and EB3 Other Worker sheepherder categories are, the date the immigrant visa petition was accepted for processing by USCIS) of the first applicant who could not be accommodated for a visa number.  *See* 8 C.F.R. § 204.5(d). For example: if there

DECLARATION OF ANDREW PARKER
1:26-CV-00300

are 3,000 visa numbers available for China EB2 and USCIS and DOS have demand from 8,000 applicants, then DOS needs to establish a cut-off date so that only 3,000 visa numbers would be allocated.  The cut-off is the priority date of the 3001st applicant. Only persons with a priority date earlier than the cut-off date for their country/category have a visa available and may be approved for adjustment of status or issued an immigrant visa in a family-sponsored or employment-based preference category.  *See* INA § 245(a) and (b), 8 U.S.C. § 1255(a) and (b). DOS publishes these cut-off dates in the Final Action Dates chart in the monthly Visa Bulletin.  I note that this is an oversimplification of the process for setting the Final Action Dates. DOS, in collaboration with USCIS, will also account for a variety of complicating factors in establishing a Final Action Date.  These include, for example, the potential that a certain percentage of applications will not be approved; accounting for aliens who have multiple pending petitions or applications in different categories; estimating and considering the number of family members who may decide to immigrate with the principal applicant[1]; considering the potential for aliens to apply for adjustment of status or immigrant visas; and considering where petitions or applications are in the adjudication process and how likely they are to result in visa use in the immediate future.

10. Visa availability, for purposes of immigrant visa issuance or the approval of an adjustment of status application, is governed by the Final Action Dates chart which reflects all of the statutory provisions established by Congress in INA §§ 201-203, 8 U.S.C. §§ 1151-1153.  Visa availability depends on an alien's country of chargeability, priority date, and immigrant visa category sought.  Visas may remain available under the overall EB limit but not be available in a given category because visa issuance for the year has already reached the category limit established in INA § 203(a) or (b), 8 U.S.C. § 1153(a) or (b).  Visas may remain available within a category but not to aliens chargeable to a given country because visa issuance to aliens chargeable to that country has already reached the relevant per-country limits established under INA § 202(a)(2) and (e), 8 U.S.C. § 1152(a)(2) and (e), and the exception of INA § 202(a)(5), 8 U.S.C. 1152(a)(5) does not apply.  Finally, visas may remain available within a category to aliens chargeable to a specific country, but not for a specific applicant because the number of similarly-situated aliens chargeable to that country with priority

---

[1] Under INA § 203(d), 8 U.S.C. §1153(d), family members (spouses or children) receive visas in the same category and with the same priority date as the principal applicant.  The visas used by derivative family members are subtracted from the annual limit.  When a principal applicant and derivative family members apply for adjustment of status together, USCIS makes every effort to adjudicate the principal and derivative family members at the same time, but this is not always possible. If a Form I-485 of a derivative family member is deemed approvable and a visa number is not available, USCIS will request the visa number from DOS, but the case will remain pending until a visa number is available, DOS allocates it, and USCIS completes the adjudication. *See* USCIS Employment-Based Adjustment of Status FAQs available at https://www.uscis.gov/green-card/green-card-processes-and-procedures/fiscal-year-2023-employment-based-adjustment-of-status-faqs (last accessed March 25, 2026).

DECLARATION OF ANDREW PARKER
  1:26-CV-00300

dates earlier than their own exceeds the number of remaining visas.  In order to implement the visa allocation system established by Congress in INA §§ 201-203, 245(a)–(b), 8 U.S.C. §§ 1151-1153, 1255(a)-(b), visa availability must be governed by these three individual characteristics of an applicant: their country of chargeability, category sought, and priority date.  To issue immigrant visas, including upon the approval of an adjustment of status application, to aliens when visas are unavailable to them based on these characteristics would be to violate these statutory provisions.

**Addressing specific issues related to this action**

11. With respect to delays in visa availability or visa issuance for the named plaintiffs as a result of the implementation of the Gold Card program, it appears that none of the named plaintiffs are chargeable under INA § 202(b) to India or China. Under the Final Action Dates chart in the Visa Bulletins for April and May of 2026, immigrant visas are immediately available in EB1 and EB2 to all aliens chargeable to countries other than India and China (the categories are "Current"). Thus, there are no delays in visa availability for the named plaintiffs in these two categories.

12. The named plaintiffs who have pending or approved immigrant visa petitions (Form I-140) in the EB1 or EB2 category have locked in the priority date associated with that petition (the date of receipt by USCIS).  The fact that other aliens may submit Form I-140G and seek immigrant visas through the Gold Card program does not change the priority dates of the named plaintiffs or their place in the queue.

13. For named plaintiffs who have not yet submitted immigrant visa petitions to USCIS, the fact that other aliens may submit Form I-140G and seek immigrant visas through the Gold Card program does not affect the plaintiffs' ability to submit those petitions and establish their priority dates.  The filing of the self-petition by the named plaintiffs, establishing their priority date and their place in line, is within the plaintiffs' control.

14. The only way in which the beneficiary of a Form I-140G could have a priority date earlier than that of one of the named plaintiffs is if the Form I-140G were submitted before a named plaintiff filed their own immigrant visa self-petition, or if the Form I-140G beneficiary already had a place in the EB1-3 visa queue based on a previously-approved Form I-140 and retained that priority date under 8 C.F.R. § 204.5(e).

15. It is normal for visas to be immediately available to all aliens chargeable to countries other than India and China within the EB1 category. With the exception

DECLARATION OF ANDREW PARKER
  1:26-CV-00300

of the period between August 2018 and April 2020, as well as rare periods at the end of a fiscal year when all visas had been exhausted, the EB1 category has been "Current" for these countries every month since the Immigration Act of 1990, Pub. L. 101-649, went into effect. At this time, we do not expect demand from countries other than India and China to exceed the supply of EB1 visas and so do not expect to see the establishment of cutoff dates in the Visa Bulletin for countries other than India and China. The current state of affairs, in which visas are immediately available to aliens chargeable to countries other than India and China, is expected to persist (barring significant changes in filing volumes or processing).

16. As DOS noted in Part D of the Visa Bulletins for March, April, and May of 2026, the availability at this time of visas without delay for aliens chargeable to countries other than India and China in the EB2 category is due to a decrease in immigrant visa issuance rates caused by "various actions the administration has taken to protect national security and public safety, and to otherwise advance the interests of the United States." Examples of such actions include Presidential Proclamation 10949, Presidential Proclamation 10998, the January 21, 2026, "Immigrant Visa Processing Updates for Nationalities at High Risk of U.S. Public Benefits Reliance," and the USCIS January 1, 2026, Policy Memorandum "Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries." DOS went on to note that "as additional immigrant visa demand materializes, or administration actions are amended, retrogression may be necessary later in the fiscal year to keep issuances within annual limits."

17. Retrogression is the term used to describe the backwards movement of a Final Action Date for a particular country or category from one month to the next. For example, in the July 2019 Visa Bulletin the Final Action Date for India EB3 was July 1, 2009. However, in the August 2019 Visa Bulletin the Final Action Date for India EB3 retrogressed to January 1, 2006. The effect of retrogression is to make visas available to a smaller population of applicants or no applicants at all. DOS retrogresses a particular Final Action Date to ensure that visa use remains within the limits established by Congress and that visas within a particular queue (based on category and country of chargeability) are generally allocated to those with the earliest priority dates.

18. If retrogression were to occur within EB2 later in FY 2026 as DOS suggests is possible, it would not disadvantage the named plaintiffs relative to aliens seeking immigrant visas through the Gold Card program. This would be true for three reasons. First, since we expect that visas would remain immediately available for aliens chargeable to countries other than India and China within the EB1 category, Gold Card program participants could seek a visa in that EB1 category rather than EB2. Second, even if a Gold Card program participant decided to

DECLARATION OF ANDREW PARKER
  1:26-CV-00300

remain within the EB2 queue, such an alien would face the same Final Action Dates as the named plaintiffs. This would be true regardless of whether the participant filed a traditional EB2 National Interest Waiver petition on Form I-140 or used Form I-140G for the Gold Card program; the visa availability will be identical for all applicants in the same category who have the same priority date and country of chargeability. Third, the volume of aliens who have submitted Form I-140G accompanied by the required fee (through March 25, 2026, as outlined in the declaration from Cara Selby) is small in comparison to the EB1 and EB2 category limits and would have no meaningful impact on the dates in the Visa Bulletin. The combined annual limit for EB1 and EB2 visas in FY 2026 is estimated to be 106,578 visas, compared to only 59 submitted Form I-140G petitions.

## Visa Availability and Demand

19. This table outlines the projected annual limits in the EB1 and EB2 categories for FY 2026 as well as visa use and the remaining visas through the beginning of March, based on the data used by DOS and USCIS when setting these categories for the April 2026 Visa Bulletin

| Category | Annual Limit (projected) | USCIS and DOS Visa Use through 3/2/26 | Visas Remaining |
|---|---|---|---|
| Total E1 | 53,289 | 18,028 | 35,261 |
| | | | |
| Total E2 | 53,289 | 19,582 | 33,707 |

Source: USCIS Office of Policy and Strategy and the Department of State Bureau of Consular Affairs Visa Office

20. I declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge. Executed this 28th day of April of 2026 in Frederick, Maryland.

ANDREW F PARKER
Digitally signed by ANDREW F PARKER
Date: 2026.04.28 14:39:35 -04'00'

ANDREW PARKER
Branch Chief of RAB
Office of Policy and Strategy
U.S. Citizenship and Immigration Services
Department of Homeland Security

DECLARATION OF ANDREW PARKER
1:26-CV-00300