# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

American Association of University
Professors, *et al.*,

                          Plaintiffs,

          v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, *et al.*,

                          Defendants.

Case No. 1:26-CV-00300

DECLARATION OF
STUART WILSON

I, Stuart Wilson, hereby declare under penalty of perjury, as follows:

1. I am employed by the U.S. Department of State ("the Department") as Deputy Assistant Secretary (DAS) for Visa Services in the Bureau of Consular Affairs.  In that capacity, among other responsibilities, I oversee the administration of the annual numerical limitations on immigrant visa issuance established by the Immigration and Nationality Act ("INA") and I oversee the publication of the Department's monthly *Visa Bulletin*.

2. On September 19, 2025, President Trump issued Executive Order 14351 entitled "The Gold Card."  That Executive Order directs the Secretary of Commerce, in coordination with the Secretary of State and the Secretary of Homeland Security, to establish a "Gold Card" visa program authorizing an alien who makes an unrestricted gift to the Department of Commerce under 15 U.S.C. 1522 (or for whom a corporation or similar entity makes such a gift) to establish eligibility for an immigrant visa using an expedited process, consistent with law and public safety and national security concerns.  The requisite gift amount is $1 million for an individual donating on his or her own behalf and $2 million for a corporation or similar entity donating on behalf of an individual.

3. Under the Gold Card program, after first applying through the Department of Commerce portal, qualifying foreign nationals may submit a Form I-140G, Immigrant Petition for the Gold Card Program (Form I-140G) to U.S. Citizenship and Immigration Services (USCIS), a component of the Department of Homeland Security, to seek classification in an existing employment-based first or second preference category ("EB-1" or "EB-2").

DECLARATION OF STUART WILSON
  1:26-CV-00300

The Gold Card program does not create a new immigrant visa category. Rather, immigrant visa numbers for Gold Card recipients, where approved, are charged against the statutorily available EB-1 or EB-2 numerical limits established by INA § 203(b), including applicable worldwide and per-country limitations under INA §§ 201 and 202.

4. To benefit from the Gold Card, an applicant must make an unrestricted gift to the United States as evidence of eligibility for the relevant employment-based preference category, must be admissible to the United States, and an immigrant visa number in that category must be available at the time of final adjudication. Once an applicant submits their online Gold Card application and initial processing fees and the Department of Homeland Security conducts vetting and adjudication of the underlying immigrant visa petition, the Department of State conducts its own screening in connection with any immigrant visa issuance, consistent with applicants in all other immigrant visa categories. Upon completion, if the applicant is otherwise found eligible for visa issuance, the applicant is asked to submit the gift to the United States which is treated as evidence of extraordinary ability (for an EB-1A visa), of exceptional business ability and national benefit (for an EB-2 visa), and of eligibility for a national-interest waiver (for an EB-2 visa, where applicable). Following approval of the immigrant visa petition, issuance of an immigrant visa, and admission to the United States, the applicant is a lawful permanent resident of the United States.

5. The INA establishes a preference-based system governing the allocation of family-sponsored and employment-based immigrant visa numbers. INA § 203(e) provides that, within each preference category and subject to applicable foreign state limitations under INA § 202, immigrant visa numbers are made available to eligible immigrants in chronological order, using an applicant's priority date to establish that order. An applicant's priority date is the date on which a completed, signed petition has been properly filed with USCIS, (or, in the case of an applicant for a labor certification, the date that a labor certification application has been accepted for processing by the Department of Labor. See 8 CFR § 204.5(d)). The worldwide, per-country, and category-based allocation rules are set forth, respectively, in INA § 201, INA § 202, and INA § 203.

6. The Department of State publishes the monthly *Visa Bulletin* to summarize, for each month, the availability of immigrant visa numbers under the worldwide and per-country limits for each preference category. The *Visa Bulletin* includes a chart of "Final Action Dates," which indicates the priority dates that are currently eligible for visa issuance by

DECLARATION OF STUART WILSON
1:26-CV-00300

the Department or final adjudication of adjustment of status by USCIS; in other words, the final action date is the priority date of the first applicant who could not be reached within the numerical limits. The *Visa Bulletin* also includes a chart of "Dates for Filing Visa Applications," which indicates the earliest dates when applicants may be notified to assemble and submit required documentation to the National Visa Center and, in some cases, when USCIS may accept applications for adjustment of status.

7. The Department of State establishes a final action date (also known as a cut-off date) whenever it is necessary to do so as a result of the statutory worldwide, per-country, category, and quarterly limits on visa issuance as well as the direction from Congress in INA § 203(e) that visas be made available "in the order in which a petition in behalf of each such immigrant is filed."  Priority dates are established pursuant to regulations, including 8C.F.R. § 204.5(d), and the Department uses these priority dates to set immigrant visa cut-off dates and ensure allocation of visa numbers in chronological priority order.

8. Conversely, when, based on reported demand and numerical projections, the Department of State determines that the supply of immigrant visa numbers in a particular category and chargeability area will be sufficient to meet all known demand for a given month, that category and chargeability area are designated as "current," which is reflected in the *Visa Bulletin* with a "C" in place of a cut-off date.  For example, if a monthly allocation target for a given category were 5,000 visa numbers and only 3,000 documentarily complete applicants had been reported for that period, that visa category could be shown as "current" for that month.

9. INA § 201(d) establishes that the worldwide level for employment-based immigrant visas is equal to 140,000, plus unused family-sponsored immigrant visa numbers from the prior fiscal year.  For FY-2026, the Department estimates the employment-based annual level to be approximately 186,000.  INA § 203(b)(1) establishes that the EB-1 category shall receive 28.6 percent of the employment-based annual limit.  For FY-2026, the Department estimates that the EB-1 limit is approximately 53,000.

10. From December 2025 to March 2026, the EB-1 visa category was shown as current for all chargeability areas except India and China, indicating that, for those months, reported demand from chargeability areas other than India and China did not exceed the number of

DECLARATION OF STUART WILSON
 1:26-CV-00300

EB-1 visas numbers available. Thus, EB-1 applicants from all chargeability areas except India and China have a visa number immediately available for allocation.

11. As China and India are oversubscribed countries under INA § 202(e), separate final action dates are imposed for applicants from these chargeability areas. Although a separate final action date was imposed for China and India, the final action dates ("cut-off dates") for both countries have advanced throughout FY-2026, which reduces the waiting period for EB-1 applicants from these countries.

12. INA § 203(b)(2) establishes that the EB-2 category shall receive 28.6 percent of the employment-based annual limit. For FY-2026, the Department estimates that the EB-2 limit is approximately 53,000. From December 2025 to March 2026, the EB-2 visa category was oversubscribed on a worldwide basis, as reflected by the presence of EB-2 cut-off dates in the *Visa Bulletin* for those months. However, the EB-2 final action dates continued to advance over that period, meaning that EB-2 visa numbers were made available to applicants with increasingly recent priority dates, thereby reducing the waiting period for EB-2 applicants worldwide relative to earlier months. With the May 2026 *Visa Bulletin*, the EB-2 category is "current" for all countries except China and India. Thus, EB-2 applicants from all chargeability areas except India and China have a visa number immediately available for allocation.

Dated: April 28, 2026

STUART R WILSON    Digitally signed by STUART R WILSON
Date: 2026.04.28 17:31:23 -04'00'

STUART WILSON

Deputy Assistant Secretary for Visa Services

U.S. Department of State

DECLARATION OF STUART WILSON
1:26-CV-00300